Thomas K. Irvine (#006365)
tirvine@polsinelli.com
Cynthia R. Estrella (#017220)
cestrella@polsinelli.com
**POLSINELLI SHUGHART, P.C.**
CityScape
One East Washington, Suite 1200
Phoenix, AZ 85004
Phone: (602) 650-2000
Fax: (602) 264-7033
*Attorneys for Maricopa County, Arizona*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>vs.<br><br>MARICOPA COUNTY, ARIZONA;<br>MARICOPA COUNTY SHERIFF'S<br>OFFICE; and JOSEPH M. ARPAIO, in his<br>official capacity as Sheriff of Maricopa<br>County, Arizona,<br><br>                         Defendants. | Case No. 2:10-cv-01878-GMS<br><br>**DEFENDANT MARICOPA COUNTY'S<br>RESPONSE TO MOTION FOR<br>SUMMARY JUDGMENT**<br><br>**AND**<br><br>**CROSS-MOTION FOR SUMMARY<br>JUDGMENT** |

Defendant Maricopa County, Arizona ("Maricopa County") hereby responds to the Motion for Summary Judgment filed by Plaintiff United States of America (hereafter "DOJ" or "Plaintiff"), and files its Cross-Motion for Summary Judgment.

Maricopa County does not dispute many of the factual allegations or law asserted in the Plaintiff's Motion for Summary Judgment.  In its Motion, however, Plaintiff asserts that the "Defendants" have failed to comply with the statutory and contractual obligations that accompany the grants of federal assistance funds.  Most, if not all, of the allegations in support of Plaintiff's Motion for Summary Judgment assert acts or omissions by the Maricopa County Sheriff's Office ("MSCO").  Throughout the Motion, Plaintiff refers to "Defendants" collectively, implying that Maricopa County has failed to respond to a DOJ request for documents and access to MCSO personnel and facilities.  Plaintiff's Separate Statement of Facts clearly indicates that Maricopa County was not involved in, or copied in

on, the extended discussions that culminated in this case.

Accordingly, Maricopa County disputes any allegations that suggest that Defendant Maricopa County has refused to cooperate with the DOJ in its investigation of MCSO's compliance with Title VI.  To the extent that the DOJ seeks declaratory relief against "Defendants" collectively, Defendant Maricopa County objects to the requested relief.

For its Cross-Motion for Summary Judgment, Maricopa County requests that this Court find: (1) that Maricopa County has not violated its statutory and contractual obligations set forth in the pre-award assurances, the assurances of continuing compliance and Title VI, (2) that DOJ has not taken the steps necessary pursuant to Title VI and its implementing regulations to make a finding of default as to Maricopa County, (3) the federal grant monies awarded to Maricopa County, and grants for which Maricopa County has applied, are not at risk of suspension or revocation as a result the alleged acts by MCSO and (4) that the only relief available to DOJ in this matter are discovery orders.

In the regular course of its ongoing governmental operations, Maricopa County continues to apply for federal assistance and is required to sign pre-award and continuing assurances.  In light of the instant lawsuit asserted against Maricopa County for alleged acts of MCSO, Maricopa County is entitled to a Judgment that no allegation in this lawsuit results in Maricopa County not being in compliance with Title VI and the implementing regulations.

This Response and Cross-Motion is supported by the Controverting and Separate Statement of Facts filed concurrently herewith and the Memorandum of Points and Authorities below.

Dated this 10th day of December, 2010.

POLSINELLI SHUGHART, P.C.


By:  /s/ Thomas K. Irvine
     Thomas K. Irvine
     Cynthia R. Estrella
     CityScape
     One East Washington, Suite 1200
     Phoenix, AZ 85004
     *Attorneys for Maricopa County, Arizona*

## MEMORANDUM OF POINTS AND AUTHORITIES

This case stems from a DOJ investigation of an alleged pattern and practice of discriminatory practices by the MCSO.  Maricopa County was not a participant in the years long discussions between DOJ and MCSO.  *See* First Amended Complaint [Dkt. 17] and Plaintiff's Statement of Facts in Support of Motion for Summary Judgment ("PSOF ¶ ___") [Dkt. 19].  Thus, Maricopa County accepts the chronology offered by DOJ, subject to revising its position in the event that MCSO offers facts that Maricopa County is unaware of in its response to DOJ's motion for summary judgment.[1]

DOJ initiated the instant lawsuit seeking declaratory and injunctive relief against Maricopa County and MCSO "to enforce Title VI and the implementing regulations issued by the United States Department of Justice and related contractual assurances."  *See* Complaint ¶ 1 [Dkt 1].  In the First Amended Complaint [Dkt. 17], Plaintiff asserts that the "Defendants" collectively have failed to comply with the DOJ's investigation.

Maricopa County acknowledges that DOJ initiated an investigation.  *See* PSOF ¶ 34, Exhibit 29.  Following the initial notice of the investigation, however, Maricopa County was not included in any of the communications or provided with copies of any

_____

[1]   Maricopa County has been informed by counsel for both DOJ and MCSO that substantial progress has been made concerning this matter, since MCSO's current counsel has been involved.  Specifically, facility inspections have occurred, inmates and staff have been interviewed, additional interviews have been tendered and rather massive amounts of documents are in the process of being produced by MCSO.  Maricopa County commends DOJ and MCSO, and their counsel, for this progress.  This progress also means that Maricopa County, and all parties, will likely conclude that the facts alleged in the First Amended Complaint and in DOJ's PSOF have changed to such a degree that the parties will need to prepare amended pleadings and statements of fact before it is appropriate for this Court to rule on DOJ's Motion.  Maricopa County hereby notifies the Court and parties that it may seek to amend this Response and Cross Motion when it becomes aware of the precise facts that currently exist.  Maricopa County will continue to work with DOJ and MCSO to assist in any way that it can to resolve the dispute that resulted in this action being filed.  Maricopa County may also suggest to the Court and parties that in the event there are disputes that the parties cannot work out, that appointment of a Magistrate as a discovery master or the like be considered in order to stop the expensive litigation.  Again, Maricopa County commends DOJ and MCSO for the progress and professionalism recently demonstrated.

correspondence between DOJ and MSCO requesting MCSO to provide copies of documents or access to MCSO personnel or to the jails.

In the course of its investigation, DOJ requested that MCSO provide certain documents and information. *See* PSOF, Exhibit 31. Importantly, DOJ did not request that Maricopa County provide documents or access. In fact, Maricopa County was never provided a copy of the request that DOJ alleges that MSCO refused to honor. In the following 17 months, DOJ and MCSO communicated about access to the information and documents sought by DOJ. *See* PSOF, Exhibits 30-45. MCSO personnel apparently had communicated directly with DOJ through the Maricopa County Attorney and through private counsel. Maricopa County was not advised of the ongoing communication between MCSO (or its representatives) and DOJ. In addition, Maricopa County does not have access to the information sought by DOJ. *See* PSOF ¶¶ 63 - 65 and Maricopa County Controverting Statement of Facts ¶ 77 ("County SOF ¶ ___").

On August 3, 2010, DOJ advised MCSO that it was not in compliance with its obligations under Title VI to cooperate fully in the investigation undertaken by the DOJ more than a year earlier. At that time, the DOJ sent a copy of the notice of MCSO's noncompliance to Maricopa County. The notice stated:

> This is to notify you that the Maricopa County Sheriff's Office (MCSO) is not in compliance with its obligations under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d to 2000d-7, to cooperate in the investigation of alleged national origin discrimination undertaken by the Department of Justice Civil Rights Division (the Division).

*See* PSOF, Exhibit 56. MCSO's D.C. lawyers responded to the DOJ's notice, but did not provide a copy of the MSCO response to Maricopa County. *See* PSOF, Exhibit 57.

Importantly, the DOJ's notice did not state that Maricopa County was not in compliance. Nonetheless, when Maricopa County received DOJ's Notice of MCSO's Noncompliance, Maricopa County's lawyers immediately advised DOJ that Maricopa County would cooperate with the DOJ's investigation, would provide any documentation within Maricopa County's possession or to which it had access, would use its subpoena

powers to compel the production of documents and witnesses and that it would cooperate in any way possible with the DOJ investigation.  *See* PSOF, Exhibit 59.  Likewise, Maricopa County urged MCSO to cooperate with the DOJ inquiry.  *See* PSOF ¶ 63, Exhibit 60.

## I.   Maricopa County Has Complied with Title VI and the Implementing Regulations.

At present, Maricopa County receives more than $150 million in single and recurring awards of federal assistance, some of which is passed through to Subrecipients.  In general, Maricopa County is the grant Recipient and an agency, such as MCSO, is the Subrecipient.[2]

Among the federal grant monies received are funds that were specifically intended for use by the MCSO for law enforcement purposes, community oriented policing services (COPS), Asset Forfeiture and Money Laundering Section.  With each grant application submitted, Maricopa County signed an assurance similar to those attached to Plaintiff's Statement of Facts as Exhibits 2, 6, 12, 22, 24.  For the applications for grants  that would result in monies to be used by the MCSO, both the Chairman of the County Board of Supervisors and the Maricopa County Sheriff were required to sign the assurances to indicate their acknowledgment and agreement.  42 U.S.C. 105(b)("In the case of any application from any . . . State or local government for Federal financial assistance for any specified purpose, the assurance required by this section shall extend to any other department, agency, or office of the same governmental unit if the policies of such other department, agency, or office will substantially affect the project for which Federal financial assistance is requested.").

When Maricopa County received the August 3, 2010 DOJ notice to MCSO, Maricopa County understood that *all* federal grant monies that it had received, including those that were not designated for MCSO operations, could be at risk if *Maricopa County* was found by DOJ to be in violation of its contractual and statutory obligations (as other

---

[2]  MCSO is not a jural entity under Arizona law.  *Braillard v. Maricopa County,* 224 Ariz. 481, 487, 232 P.3d 1263, 1269 (App. 2010).  Thus, the grant applications attached to the PSOF are approved by and executed by Maricopa County through its Board of Supervisors.

federal agencies and departments might rely on DOJ's notice of default).  With so much at risk, Maricopa County understood how important it was to cooperate fully with DOJ's lawful investigation and to provide DOJ assistance to access any documents, information, personnel and facilities lawfully requested in the course and scope of its investigation. Despite Maricopa County's efforts to cooperate with DOJ's investigation into alleged violations of Title VI, Plaintiff now asserts that *Maricopa County* has failed to provide access to Maricopa County facilities, records, personnel and to cooperate in DOJ's investigation of Defendant *MCSO's* alleged discrimination and violation of 42 U.S.C. § 2000d.

Defendant Maricopa County continues to apply for and renew requests for federal assistance from DOJ and other Federal Agencies and Departments.  DOJ alleges that *Maricopa County* is in violation of the contractual assurances and statutory obligations, as a result of MSCO's failure to cooperate, thus, Maricopa County is in a difficult predicament—unless and until this Court considers Plaintiffs Motion for Summary Judgment, Maricopa County may be deemed to be in violation of the letter and spirit of the assurances, even though it has never failed to respond to DOJ.

## II.   Plaintiff Does Not Assert Any Acts by Maricopa County in Violation of Title VI or the Implementing Regulations.

A review of the Plaintiff's Statement of Facts and Motion make clear that DOJ does not allege that Maricopa County committed any acts in violation of Title VI or the implementing regulations.  Maricopa County cross moves for summary judgment finding that it is not in violation of Title VI.

The only possible basis that Plaintiff has to name Maricopa County as a defendant in this lawsuit is the fact that (1) Maricopa County prepared and filed the applications for federal funds; (2) Maricopa County owns the jail facilities utilized by MCSO; and (3) Maricopa County employs all MCSO deputies and other personnel that DOJ wants to interview.  Pursuant to Arizona law, however, the constitutionally created office of sheriff is charged with managing those employees and keeping the jail.

Plaintiff's Motion spends significant space asserting its right to the information sought from MCSO.[3]  Maricopa County does not dispute Plaintiff's general right to the information it seeks to conduct its investigation of the complaint of discriminatory practices.  On the other hand, Maricopa County does not have the ability to control MCSO or to compel MCSO to comply with DOJ's investigation, request for cooperation, request for documents and information or access to MCSO personnel and facilities.

Maricopa County agrees that it is required to cooperate in the DOJ investigation. Indeed, Maricopa County's efforts to convince MCSO to cooperate (including offering the use of its subpoena powers) satisfied its obligations:  "Each responsible Department official shall, to the fullest extent practicable, seek the cooperation of recipients in obtaining compliance with this subpart and shall provide assistance and guidance to recipients to help them comply voluntarily with this subpart."  28 C.F.R. § 42.106 (a).  Maricopa County has complied with this requirement—Plaintiff has not because it cannot point to a single instance when Maricopa County has refused to cooperate.

## III.    DOJ Cannot Terminate or Cancel Federal Assistance Funds for Unrelated Programs or Activities.

In the event that this Court were to agree with DOJ that MCSO violated the requirements of Title VI or the implementing regulations, all of the federal funds that Maricopa County applied for may be at risk because of the pre-award assurances and continuing assurances signed by Maricopa County.  As noted above, all of the assurances were signed by Maricopa County in reliance on MCSO's representations that MCSO had complied fully with Title VI and the implementing regulations.  In the event of termination

---

[3]   *See United States v. County of Fairfax*, 69 F.2d 932, 935-36 (4th Cir. 1980)(holding that County was required to maintain records needed to ascertain compliance with its nondiscrimination obligations); *Freeman v. Cavazos*, 939 F.2d 1527, 1531 (11th Cir. 1991)(holding that school district was required to comply with Department of Education regulations requiring cooperation with Title VI); *United States v. Baylor University Medical Center*, 736 F.2d 1039, 1040-41 (5th Cir. 1984) (applying DHHS regulations which incorporate Title VI requirements to allow access to the facility and information requested to investigate a complaint of discrimination).

of or refusal to grant or to continue federal assistance, such action must be limited to the particular political entity or part thereof, or other recipient, as to whom the finding of noncompliance is made, and must be limited in its effect to the particular program, or part thereof, in which the noncompliance is found.  42 U.S.C.A. § 2000d-1.  This limitation is mandatory, and the burden of limiting the effects of termination rests upon the administrative agency responsible for the order of termination.  *Board of Public Instruction of Taylor County, Fla. v. Finch*, 414 F.2d 1068 (5th Cir. 1969).

Wholesale cutoffs of federal funds from all related federally funded programs are not justified by discrimination found in isolated activities. *Gautreaux v. Romney*, 457 F.2d 124 (7th Cir. 1972).  Put another way, if the DOJ at the conclusion of its investigation were to conclude that MCSO had violated Title VI, those federally-funded programs unrelated to MCSO cannot be terminated or placed at risk of nonrenewal simply because Maricopa County signed an assurance indicating full compliance with Title VI.  In this case, DOJ chose not to involve Maricopa County in its years long discussion with MCSO and is therefore precluded from impairing even funding for MCSO as it is likely that such funding would have to be replaced by Maricopa County.

In a Civil Rights case, the Court's task is "to correct, by a balancing of the individual and collective interests, the condition that offends the Constitution."  *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 16, 91 S. Ct. 1267, 1276, 28 L. Ed. 2d 554 (1971).  There must be a balancing of interests.  The rights of the many thousands of beneficiaries of the funding provided through the County grant applications and award of federal funds cannot be ignored.  If the Court were to allow DOJ's finding of noncompliance by MCSO (a single department within Maricopa County) to cause the termination of all federal funding it would offend the purpose of the federal grants—to offer monetary assistance to serve millions of Arizonans for the actions of a few.

In *Board of Public Instruction of Taylor County, Fla. v. Finch*, 414 F.2d 1068 (5th Cir. 1969), the Department of Health, Education and Welfare terminated all federally-financed activities because of segregation in elementary schools and high schools in the

county.  The Court of Appeals held that schools and programs are not condemned en masse by Section 602 of the Civil Rights Act of 1964 where racial discrimination and segregation are found *in isolated activities*, but only if such activities utilize federal money for unconstitutional ends.  The Court of Appeals in *Taylor County* reasoned that wholesale cutoffs of federal funds from all related federally-funded programs was not required under the Civil Rights Act of 1964.  Instead, a case-by-case application of principles of nondiscrimination to particular activities should be applied.  *Id.*

Maricopa County cross moves for a judgment that the only relief available to DOJ in this matter, based on these facts, are orders requiring the production of documents and people.  Federal funds, even for MCSO, cannot be at risk pursuant to these facts and the controlling Title VI authorities.

**IV.    Conclusion:  Maricopa County has Not Violated it Statutory or Contractual Obligations**.

In the absence of any evidence that <u>Maricopa County</u> has refused to cooperate, or has committed any acts in violation of Title VI or the implementing regulations, this Court must enter an order finding that (1) Maricopa County has <u>not</u> violated the letter or spirit of the pre-award and continuing assurances required by Title VI; (2) unrelated federally-funded programs and departments are not subject to cancellation or termination of federal funding and (3) the only relief available to DOJ in this matter are discovery orders.

Dated this 10th day of December, 2010.

POLSINELLI SHUGHART, P.C.

By: /s/ Thomas K. Irvine
        Thomas K. Irvine
        Cynthia R. Estrella
        CityScape
        One East Washington, Suite 1200
        Phoenix, AZ 85004
        *Attorneys for Maricopa County, Arizona*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2010 a true and correct copy of the foregoing was filed with the Court and distributed electronically through the ECF system to all individuals registered on ECF in this action:

Amin Aminfar:  amin.aminfar@usdoj.gov

Roy L. Austin:  roy.austin@usdoj.gov

Matthew Colangelo:  matthew.colangelo@usdoj.gov

Peter S. Gray:  peter.gray2@usdoj.gov

Avner Shapiro:  avner.shapiro@usdoj.gov

Laurie A. Gelman: laurie.gelman@usdoj.gov

Michael M. Walker:  Michael.Walker4@usdoj.gov

John T Masterson  jmasterson@jshfirm.com

Joseph John Popolzio:  jpopolizio@jshfirm.com

William R. Jones, Jr.:  Wjones@jshfirm.com


By:  /s/ Kimberley K. Mosaidis